UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 8:24-CR-211-TDC |
| | ) | |
| HOAU-YAN WANG, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DR. HOAU-YAN WANG'S REQUEST
FOR ISSUANCE OF A RULE 17(C) SUBPOENA**

Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, Defendant Dr. Hoau-Yan Wang ("Dr. Wang") submits this Motion and Memorandum of Law in Support of his Request for the Issuance of a Rule 17(c) Subpoena to University 1, which is his employer.[1] For the reasons set forth below, Dr. Wang respectfully asks the Court to issue an order directing service of the subpoena *duces tecum* returnable to undersigned counsel within thirty (30) days of the subpoena's issuance.

**FACTS**

Dr. Wang, a tenured medical professor at University 1's School of Medicine, worked with Company 1, a publicly traded biopharmaceutical company, on its development of Drug A, a potential treatment for Alzheimer's Disease. (Doc. 1 ¶¶ 1, 2). Drug A progressed through Phase 1 and 2 trials and is currently in its Phase 3 trial under the oversight of the U.S. Food and Drug Administration (FDA), with research supported by funding from the National Institutes of Health

---

[1] Third-parties to these proceedings are referenced by the same pseudonyms used for them in the underlying Indictment. University 1 is identified by name in the proposed subpoena filed under seal with this motion as **Exhibit A**.

(NIH). (*Id. ¶¶* 4-8, 11). Dr. Wang conducted testing for Phases 2(a) and 2(b) in his University 1 laboratory. Neither he nor University 1 are involved in Phase 3. (*Id.* ¶ 11).

As part of his responsibilities, Dr. Wang managed biomarker testing of Drug A through two primary techniques: (1) Western blotting, and (2) ELISA (Enzyme-Linked Immunosorbent Assay), both of which are used to quantify biomarker levels. (*Id.* ¶ 9). Western blotting separates biomarkers by size, transfers them to a membrane, and then detects them using antibodies. (*Id.*). The resulting biomarker bands are visualized, in part, by exposing X-ray films and using a scanner to create digital images of those X-ray films. (*Id.*). These scanned films are essential for generating densitometry readings, which quantify the intensity of the biomarker bands. (*Id.*). The densitometry data, combined with any processed images from the X-ray films, are used to create a final publication image that visually illustrates the biomarker quantification results. (*Id.*). ELISA quantifies biomarker concentrations in liquid samples by measuring the color changes caused by particular reactions, producing data on biomarker levels. The resulting data is automatically compiled by the ELISA plate reader into spreadsheets, which include this quantification and associated metadata.

In the Indictment dated June 27, 2024, the United States broadly accuses Dr. Wang of making false statements in connection with NIH-funding applications related to the research on Drug A. (*See, e.g.*, Doc. 1 ¶¶ 14-27). Though it deals with five separate grant applications whose total pages number well into the thousands, the Indictment identifies only one "example" figure for which it alleges Dr. Wang "fabricated the Western blot . . . and the corresponding densitometry data," and otherwise refers generally to "fabricated Western blots" without specifying the figures allegedly involved. (*Id*. ¶ 18). Among its generalized allegations, the United States accuses Dr. Wang of "manipulating data and images . . . and then drawing conclusions . . . that were not based

upon truthful scientific testing," but other than the single image identified in Paragraph 18, the Indictment makes no specific allegations of which images and/or data were supposedly manipulated. (*Id*. ¶¶ 14(c), 18). The Indictment also makes reference to certain submissions by Dr. Wang to academic journals "about his scientific research" and a supposed failure to keep and provide "relevant data he possessed to the government" allegedly in order to conceal his purported scheme. (*Id.* ¶¶ 14(a), (d), (e), 15, 17). But, again, the Indictment fails to specify what academic journal work was supposedly manipulated and what "relevant data" was supposedly withheld. (*Id*. ¶ 14(f)).

Through the requested subpoena, Dr. Wang seeks access to specifically identified instrumentation on which the "scientific research" at issue was performed and the source data repositories for same. (*Id*. ¶¶ 1, 3, 10, 13, 14(a), (c), (d), (e), 15, 17, 19, 27). Given the broad allegations outlined in the Indictment, it is essential to obtain for Dr. Wang's defense, not only the files related to the specific Western blot, densitometry and ELISA plate reader data for the single figure specifically referenced in the Indictment, but also all Western blot, densitometry and ELISA plate reader files stored in or on the storage devices described in Appendix A attached hereto that include all of Dr. Wang's work with Company 1 to date. (Doc. 1). This includes all Western blot records, densitometry and ELISA plate reader audit trials and spreadsheets, along with their metadata, such that Dr. Wang can potentially demonstrate and validate the nature, timing and degree of his use and access of the subject hardware and software, along with the data recordation and storage for same, all of which is crucial to his defense. The requested instrumentation and information access is expected to provide evidence of the "scientific testing" and data and imaging development at the heart of the United States' claims, illustrate the manner in which Dr. Wang's research conclusions were drawn, and further address issues the Indictment raises with respect to

the existence and production of relevant data to the government. (*Id*. ¶¶ 14(c), 20, 24, 25). It is vital to secure all relevant materials related to Dr. Wang's work with Company 1, including academic journal articles, to effectively address the United States' claims and ensure a thorough defense.

Dr. Wang has been unsuccessful in procuring the requested records directly from University 1 through his own diligence. (Ex. B, p. 1). On July 2, 2024, Dr. Wang and his legal counsel, accompanied by a group of forensic experts retained by Dr. Wang to collect and analyze the desired materials (his "legal team"), traveled to the University 1 campus to collect and image certain hardware contained in Dr. Wang's laboratory and office for the purpose of conducting evidence preservation and record collection crucial for his defense. (Ex. C; Ex. B, p. 2). After initially indicating it would permit such efforts, University 1's General Counsel's Office informed Dr. Wang's legal team that University 1 would only allow Dr. Wang's legal team to obtain the electronic files and records in question if this Court issued the requested subpoena duces tecum. (Ex. D; Ex. B, p. 1). As a result, Dr. Wang is moving this Court for issuance of this subpoena as his only option to obtain this critical evidence.

**ARGUMENT**

Rule 17(c) of the Federal Rules of Criminal Procedure provides for the issuance of subpoenas requiring the production of books, papers, documents, data or other objects. *See* Fed. R. Crim. P. 17(c). Subpoenas issued under Rule 17(c) promote fairness and efficiency in criminal proceedings. *See United States v. Caro*, 597 F.3d 608, 619-20 (4th Cir. 2010) (finding that Rule 17(c) "implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor") (quoting *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988)); *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (ordering the pretrial production of documents under Rule 17(c), to "expedite the trial by providing a time and place *before* trial for the inspection of

the subpoenaed materials") (emphasis added); *see also United States v. Nixon*, 418 U.S. 683, 699 n.11 (1974) (noting that the Federal Judicial Center recommends that use of Rule 17(c) be encouraged in complex criminal cases so that each party may be able to produce documentary evidence well in advance of trial) (citing Federal Judicial Center, *Manual for Complex and Multidistrict Litigation* at 150 (1st ed. 1968)).

In *United States v. Nixon*, the Supreme Court found that a Rule 17(c) pretrial subpoena is appropriate and reasonable if the requesting party demonstrates that (1) the materials requested "are evidentiary and relevant;" (2) the materials "are not otherwise procurable reasonably in advance of trial by exercise of due diligence;" (3) the requesting party "cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial;" and (4) "the application is made in good faith and is not a general 'fishing expedition.'" *Nixon*, 418 U.S. at 698-700 (footnote omitted); *see also Caro*, 597 F.3d at 620 (summarizing the *Nixon* requirements as "(1) relevancy; (2) admissibility; [and] (3) specificity"). All of the *Nixon* requirements are satisfied here.

The requested subpoena seeks forensic images of certain storage devices Dr. Wang used to store files, data and documents related to experiments he performed for Company 1 at his University 1 lab. These items are material to Dr. Wang's defense, relevant to the allegations in the Indictment, and expected to include admissible evidence that is directly exculpatory, including but not limited to audit trails verifying that Dr. Wang's work was conducted without manipulation. The records also are required sufficiently in advance of trial in order for Dr. Wang to undertake the requisite analysis of the information in order to be able to prepare his defense.

In its Indictment, the United States alleges that Dr. Wang falsified the results of certain research conducted in his University 1 laboratory in connection with the development of the

5

Alzheimer's Disease Drug A by Company 1. (Doc. 1). The forensic imaging sought by Dr. Wang, as detailed in Attachment A to the subpoena (Ex. A), is specifically directed at obtaining devices containing electronically stored records, information and data sets pertinent to that research. This includes Western blot images, system access and utilization logs, and densitometry readings that are central to the United States' allegations as described in the Indictment. (Doc. 1). Consequently, Dr. Wang's subpoena request is specifically tailored to obtain records that are crucial to his defense, rather than constituting an overbroad "fishing expedition."

Moreover, the requested forensic imaging is essential for identifying and retrieving hidden, deleted, or missing files critical to Dr. Wang's defense. The United States has pinpointed certain records integral to their case that Dr. Wang has been unable to locate, which are believed to reside on one of the requested storage devices. Additionally, Dr. Wang has indicated that certain files, which were once available and are now missing, are similarly stored. This methodology is therefore critical for uncovering evidence that may not be obtainable through standard document collection procedures.

Dr. Wang has already undertaken significant effort to access and image the systems and information sought in this Motion without having to resort to Court intervention, but Dr. Wang's efforts have been rebuffed by University 1. As a result, the only way for Dr. Wang to obtain these critical records is through this Court's issuance of the requested and necessary Rule 17(c) subpoena.

**CONCLUSION**

For these reasons, Dr. Wang respectfully asks this Court to grant his request for a Rule 17(c) subpoena to be issued to University 1 in the form reflected in Exhibit A and to issue an order

directing service of the subpoena *duces tecum* returnable to undersigned counsel within thirty (30) days of the subpoena's issuance.[2]

Dated: August 27, 2024

                                                   Respectfully submitted,

                                                   /s/ Jennifer L. Beidel
                                                   Jennifer L. Beidel (*Pro Hac Vice)*
                                                   Mark Chutkow (*Pro Hac Vice*)
                                                   Joanne Zimolzak (19342)
                                                 Timothy Caprez (*Pro Hac Vice)*
                                                 Emma Blackwood (*Pro Hac Vice*)
                                                 *Counsel for Hoau-Yan Wang*

                                                 **DYKEMA GOSSETT PLLC**
                                                 39577 Woodward Avenue
                                                 Suite 300
                                                 Bloomfield Hills, MI 48304
                                                 Telephone: (248) 203-0700
                                                 Fax: (866) 219-1641

---

[2] A subpoena *duces tecum* to University 1 is attached as **Exhibit A**. A Proposed Order is attached as **Exhibit B**.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of August 2024, I filed the foregoing Motion and Memorandum of Law in Support of Dr. Wang's Request for the Issuance of a Subpoena to the City University of New York with the Clerk of the Court for the U.S. District Court for the District of Maryland, using the Court's CM/ECF system. The CM/ECF system sent a "Notice of Electronic Filing" to all counsel of record who have entered an appearance in this matter.

Dated: August 27, 2024　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 /s/ Jennifer L. Beidel
　　　　　　　　　　　　　　　　　　　　　　Jennifer L. Beidel (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　　　Mark Chutkow (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　　　Joanne Zimolzak (19342)
　　　　　　　　　　　　　　　　　　　　　　Timothy Caprez (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　　　Emma Blackwood (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　　　*Counsel for Hoau-Yan Wang*

　　　　　　　　　　　　　　　　　　　　　　**DYKEMA GOSSETT PLLC**
　　　　　　　　　　　　　　　　　　　　　　39577 Woodward Avenue
　　　　　　　　　　　　　　　　　　　　　　Suite 300
　　　　　　　　　　　　　　　　　　　　　　Bloomfield Hills, MI 48304
　　　　　　　　　　　　　　　　　　　　　　Telephone: (248) 203-0700
　　　　　　　　　　　　　　　　　　　　　　Fax: (866) 219-1641