UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 8:24-CR-211-TDC |
| ) | |
| HOAU-YAN WANG, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT DR. HOAU-YAN WANG'S
REPLY IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT**

Joanne Zimolzak (19342)
DYKEMA GOSSETT PLLC
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8600
jzimolzak@dykema.com

Jennifer L. Beidel (*Pro Hac Vice*)
Mark Chutkow (*Pro Hac Vice*)
Timothy Caprez (*Pro Hac Vice*)
Emma Blackwood (*Pro Hac Vice*)
Alison Furtaw *(Pro Hac Vice)*
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
Email: jbeidel@dykema.com
mchutkow@dykema.com
tcaprez@dykema.com
eblackwood@dykema.com

*Counsel for Dr. Hoau-Yan Wang*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 12

    A.    The Indictment Fails to Allege Materiality ............................................................ 1

    B.    The Major Fraud (Count 1) Count is Time-Barred. ............................................... 6

    C.    The Indictment's Vague Allegations Do Not Provide Dr. Wang Fair Notice of the Charges Against Him, and the Discovery Does Not Cure that Deficiency. ...................................... 7

CONCLUSION.................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*In re § 1031 Exch. Litig.*,
 716 F. Supp. 2d 415 (D.S.C. 2010) ........................................................................................ 9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................ 1, 9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................................ 1

*Cf. Haq v. Adora Mfg. Inc.*,
 No. 1:23-cv-316, 2024 U.S. Dist. LEXIS 164903 (M.D.N.C. Sep. 13, 2024) ........................ 7

*First Fin. Sav. Bank v. Am. Bankers Ins. Co.*,
 No. 88-33-CIV-5-H, 1990 U.S. Dist. LEXIS 18860 (E.D.N.C. July 5, 1990) ...................... 10

*Medeiros v. Wal-Mart, Inc.*,
 434 F. Supp. 3d 395 (W.D. Va. 2020) .................................................................................... 2

*Neilson v. Union Bank of Cal.*, N.A.,
 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................................ 10

*United States ex rel. Feldman v. van Gorp*,
 697 F.3d 78 (2d Cir. 2012) ..................................................................................................... 5

*United States ex rel. Scollick v. Narula*,
 215 F. Supp. 3d 26 (D.D.C. 2016) .......................................................................................... 9

*United States ex rel. Taylor v. Boyko*,
 39 F.4th 177 (4th Cir. 2022) ................................................................................................... 1

*United States ex rel. Tran v. Computer Scis. Corp.*,
 53 F. Supp. 3d 104 (D.D.C. 2014) .......................................................................................... 9

*United States v. Automated Med. Labs., Inc.*,
 770 F.2d 399 (4th Cir. 1985) ................................................................................................ 11

*United States v. Bortnovsky*,
 820 F.2d 572 (2d Cir. 1987) ................................................................................................. 12

*United States v. Curran*,
 643 F. Supp. 3d 921 (S.D. Iowa 2022) ................................................................................... 6

*United States v. Duncan*,
 598 F.2d 839 (4th Cir. 1979) ................................................................................................. 6

*United States v. Elbaz*,
  332 F. Supp. 3d 960 (D. Md. 2018) ...................................................................................... 11

*United States v. Everett,*
  91 F.4th 698 (4th Cir. 2024*)* ................................................................................................ 10

*United States v. Jaynes*,
  75 F.3d 1493 (10th Cir. 1996) ................................................................................................ 6

*United States v. Procter & Gamble Co.*,
  356 U.S. 677 (1958) ................................................................................................................ 5

*United States v. Quinn*,
  359 F.3d 666 (4th Cir. 2004) .................................................................................................. 8

*United States v. Raza*,
  876 F.3d 604 (4th Cir. 2017) .................................................................................................. 2

*United States v. Reitmeyer*,
  356 F.3d 1313 (10th Cir. 2004) ........................................................................................... 6, 7

*United States v. Sampson*,
  448 F. Supp. 2d 692 (E.D. Va. 2006) ..................................................................................... 6

*United States v. Smith*,
  54 F.4th 755 (4th Cir. 2022) ................................................................................................... 2

*United States v. Walgreen Co.*,
  78 F.4th 87 (4th Cir. 2023) ..................................................................................................... 2

*United States v. Whaley*,
  786 F.2d 1229 (4th Cir. 1986) ................................................................................................ 3

**Statutes**

18 U.S.C. § 2 ................................................................................................................................ 9, 10

18 U.S.C. § 1031 ............................................................................................................................ 6, 7

31 U.S.C. § 3729 ................................................................................................................................ 2

In its opposition brief, the Government repeatedly contends that Defendant Hoau-Yan Wang ("Dr. Wang") refuses to accept "facts as true," but that argument ignores the core issues with the Indictment. The problem lies not in Dr. Wang's rejection of "facts" contained in the Indictment, but in the Government's failure to allege "facts," rather than conclusory statements. The Indictment is devoid of the specificity and factual bases required to substantiate such conclusory allegations and fails to satisfy the legal standard for particularity. As a result, the Court should dismiss the Indictment.

In the alternative, if the Government truly possesses *facts* supporting its conclusory allegations, the Government should provide a bill of particulars outlining that factual foundation. Without such clarification, the allegations remain impermissibly vague, undermining the fundamental fairness and due process required in criminal proceedings.

A.      **The Indictment Fails to Allege Materiality**

The Government seems to operate under the flawed assumption that simply invoking the word "material" in connection with each count is sufficient to establish materiality. It is not. Merely claiming a statement is 'material' without providing further factual support is a barebones statement of the elements of the claim that cannot withstand a motion to dismiss. *See United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 193 (4th Cir. 2022) ("'[N]aked[ly] assert[ing]' that a requirement is 'material,' without 'further factual enhancement,' is a formulaic recitation of the elements of a cause of action"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasizing that materiality requires more than merely labeling a statement as "material," a formulaic recitation of a cause of action's elements is insufficient, and factual allegations must be sufficient to raise the right to relief above the speculative level); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to 'unlock the doors of discovery.'"). Repeatedly claiming "materiality" without factual backup is

1

nothing more than a rhetorical shortcut—a transparent attempt to substitute repetition for substance. *See Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 411 (W.D. Va. 2020) (rejecting threadbare recitals supported by "mere conclusory statements"). Materiality is not a mere box to check with legal jargon; it requires concrete allegations that demonstrate how the purported misstatements influenced or had the potential to influence the decision-maker, which here is the National Institute of Health ("NIH"). *See United States v. Walgreen Co.*, 78 F.4th 87, 92 (4th Cir. 2023) ("[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property" (quoting 31 U.S.C. § 3729(b)(4))); *United States v. Smith*, 54 F.4th 755, 769 (4th Cir. 2022) ("The government 'must prove materiality by reference to the particular government agency or public officials that were targeted'" (citing *United States v. Raza*, 876 F.3d 604, 617 (4th Cir. 2017)).

Setting aside the Government's repetitive assertions and conclusory labels, what remains is a hollow argument unsupported by meaningful substance. The Indictment repeats the phrase "materially false, fraudulent and misleading statements" thirteen times without offering specific factual or contextual support for what statements were supposedly materially false. (*See, e.g.,* Doc. 1 ¶¶ 13, 14(a), (b), (d), (e), 15, 17, 18, 25, 29, 32, 34, 29). Instead, the Indictment offers overbroad language that encompasses decades of Dr. Wang's voluminous research and leaves him without any ability to respond to the Government's case against him. By way of example, the Government claims that the allegedly materially false statements concern Dr. Wang's decades of "scientific research underlying Drug A and Test A," including (1) the "nature and scope of his scientific experiments," the "mechanism" of Test A[1] and Drug A, and "the improvement of certain indicators" of Alzheimer's disease in patients treated with Drug A (*id.* ¶¶ 13, 14); (2) thousands of

---

[1] The anonymized terms used in this Reply are used in the same way as those in the Indictment.

2

pages of "NIH grant applications" (*id.* ¶¶ 14(a), 15, 17); and (3) hundreds of pages of "scientific journal articles" and scores of communications with those journals (*id.* ¶¶ 14(d), (e)). When combined with the volume of discovery here, which currently numbers at over 1 million records, Dr. Wang is left flatfooted and without the ability to discern what supposed misstatement(s) he made and to whom. Without specifying what misstatements were supposedly made, and to whom, the Government also fails to properly allege that those misstatements were material to the funding decisions of the NIH, an entity the Government admits continues to fund Company 1's research. (Doc. 58 at 5); *See United States v. Whaley*, 786 F.2d 1229, 1232 (4th Cir. 1986) ("[T]he materiality of a statement rests upon a factual evidentiary showing.").

What's more, the Indictment also claims "material omissions" about certain aspects of Proposals 1 and 2 without explaining what exactly was omitted and what makes that omission material to the NIH's funding decision. (Doc. 1 ¶¶ 18, 25). Considering that Dr. Wang did not submit any of the grant proposals, it is imperative that the Government identify which of his supposed statements were material to the NIH's funding decision. This vague and conclusory language does nothing to show how these unidentified omissions actually impacted or had the potential to influence the NIH's decision-making, so the Government does not meet the materiality requirement.

The Government attempts to salvage its position by advancing three flawed points, each of which collapses under scrutiny. (Doc. 58 at 5). First, the Government asserts that Dr. Wang's focus on Figure 1 is misplaced, claiming that Figure 1 is only an "example." (*Id.*). However, Dr. Wang reasonably focused on Figure 1 because it is the *only* figure explicitly identified in the Indictment as allegedly false. While the Indictment vaguely references other "materially false" statements and unspecified figures, it provides no details about what these other figures are, how they are false,

3

or how they impacted NIH's funding decisions. The Government's concession that Figure 1 is an "example" is exactly what is wrong with the Indictment and the accompanying 1 million discovery records: Dr. Wang cannot discern the universe of statements, images, and other records that the Government claims to be false. The criminal justice system should be a transparent system designed to provide the defendant with equal access to information and defenses. The Government's positions both here and in the pre-Indictment phase are an overreach and violative of Dr. Wang's constitutional rights.

Further, the Government does not assert that Dr. Wang directly submitted these other figures, but instead somehow "caused" them "to be submitted" by Company 1. (*See, e.g.,* Doc. 1 ¶¶ 14(a), (d), 15). The Government does not allege who at Company 1 actually submitted the other figures or how Dr. Wang, an independent consultant outside of Company 1, somehow cause Company 1, a publicly traded pharmaceutical company, to submit them. Dr. Wang, then, is left to attempt to decipher which figures the Government is referencing, when he did not submit them and does not know who did. The Government cannot satisfy either the materiality or particularity requirements with such vague allegations.

Second, after claiming Figure 1 is only an "example," the Government then turns its own argument on its head and claims Dr. Wang improperly discounts the importance of Figure 1. (*Id.*). Yet the Indictment itself fails to explain how Figure 1—or any other figure—was material to the NIH's funding decisions, making any assertion of materiality speculative at best.

If Figure 1 were truly material, one would expect some demonstrable impact on the NIH's actions, yet the Indictment fails to provide such evidence. The Government's reliance on NIH employee statements for such evidence underscores the insufficiency of the Indictment itself. If the materiality allegations in the Indictment were sufficient, there would be no need to refer to

4

evidence produced in discovery. In any event, the NIH employee statements contained within the voluminous discovery notably fail to explain why—if the figure in question were truly material and, as the Government alleges, manipulated—the NIH has continued to fund Company 1's work.

Third, the Government's claim that the NIH has not acted differently due to lack of access to the Government's investigative materials is both irrelevant and deeply problematic. (*Id.* at 6). Materiality is determined by the potential influence of a fact on a reasonable decision-maker, not the availability of specific documents uncovered during the investigation. *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 96 (2d Cir. 2012). Grand jury secrecy rules allow the Government to share certain core facts without revealing the grand jury's inner workings, particularly when addressing alleged false statements supposedly material to a government agency's decisions. *See, e.g.*, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958) (holding "grand jury secrecy could be 'lifted discretely and limitedly' in cases of 'particularized need'"). If the Government deemed Dr. Wang's allegedly false statements serious enough to warrant criminal charges, then the Government would presumably have shared this critical information with the NIH—the agency allegedly defrauded. The NIH's continued funding and support for the project undermines the Government's conclusory claim of materiality.

In sum, the Indictment's conclusory references to materiality, unsupported by specific factual allegations, render it legally insufficient and warrant dismissal. Alternatively, as the Government apparently concedes, a bill of particulars is necessary (Doc. 58 at 2) to clarify the allegations and allow Dr. Wang to meaningfully defend himself.[2] *United States v. Duncan*, 598

---

[2] Dr. Wang notes with significant concern that, despite the Government's offer to meet and confer during the initial status conference, it failed to follow up on this offer until the *very day* Dr. Wang's motions were due—a blatant maneuver that effectively eliminated any chance for meaningful discussion. This eleventh-hour approach is emblematic of the Government's broader disregard for procedural fairness in this case. The allegations, involving more than 1 million discovery

5

F.2d 839, 848 (4th Cir. 1979); *see United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) (ordering a bill of particulars to inform the Defendant of specific allegations).

### B.     *The Major Fraud (Count 1) Count is Time-Barred.*

The Government's argument that the resubmission of allegedly fraudulent material can reset the statute of limitations for a major fraud offense is legally flawed because major fraud is not a continuing offense. (Doc. 58 at 6-7); 18 U.S.C. § 1031(f); *United States v. Reitmeyer*, 356 F.3d 1313, 1322 (10th Cir. 2004) ("[T]he 'execution' of a scheme under the Major Fraud Act is not a 'continuing offense' for statute of limitations purposes"); *United States v. Jaynes*, 75 F.3d 1493, 1506 n.12 (10th Cir. 1996) ("Separate offenses may be part of a common scheme without being 'continuing' for limitations purposes."). A new submission of the same supposedly fraudulent material does not revive or extend the statute of limitations for the underlying fraudulent conduct. *See, e.g.*, *United States v. Curran*, 643 F. Supp. 3d 921, 924 (S.D. Iowa 2022) (noting that bank fraud offenses, which are not continuing, were complete in November 2009 and December 2010, when the defendant obtained money through fraudulent checks and concealed it in QuickBooks; subsequent repetitions of the conduct did not alter this conclusion).

Major fraud is a discrete offense, and the statute of limitations begins to run when the fraudulent act is committed, not when the fraudulent material is later used in a separate, subsequent submission. *Reitmeyer*, 356 F.3d at 1323 ("Once the scheme is 'executed,' the crime has ended, and additional conduct in furtherance of the scheme does not extend the statute of limitations for that particular 'execution.'"); *Cf. Haq v. Adora Mfg. Inc.*, No. 1:23-cv-316, 2024 U.S. Dist. LEXIS

---

documents and multiple grant applications and journal articles, are highly complex and intertwined. The Government's failure to engage in timely communication about its allegations not only undermines Dr. Wang's ability to adequately respond but also exemplifies why a bill of particulars is critical in this case.

6

164903, at *13 (M.D.N.C. Sep. 13, 2024) ("Under the *continuing* [offense] [] theory, 'each issuance' of a paycheck constitutes a new cause of action for statute of limitations purposes.").

The Government's position that the conduct underlying the charged major fraud occurred on January 12, 2018, relies on a faulty assumption that the submission of fraudulent Proposal 1 to the NIH somehow "restarts" the statute of limitations for the conduct tied to Figure 1. (Doc. 58 at 7). However, the mere reuse of Figure 1 from the August 2016 Grant 1 application does not constitute a new act of fraud that would extend the limitations period. *See, e.g., Reitmeyer*, 356 F.3d at 1325 ("The statute of limitations began running when the Companies 'executed' their scheme on May 16, 1994. The Companies' subsequent meeting with the Corps in 1995 was not a 'continuation' of their 'execution'"; which was completed when the claim was filed. The meeting was "merely an act in furtherance", not an extension of the limitations period.). As noted, any alleged fraud connected to Figure 1 occurred in August 2016, when it was first included in the application for Grant 1, and is well outside the statute of limitations for major fraud under 18 U.S.C. § 1031(f). Therefore, the major fraud charge should be dismissed.

C. ***The Indictment's Vague Allegations Do Not Provide Dr. Wang Fair Notice of the Charges Against Him, and the Discovery Does Not Cure that Deficiency.***

The Government's claim that the voluminous discovery—exceeding 1 million records[3]—provides Dr. Wang with the ability to discern the "core allegations" (Doc. 58 at 12-13) is both

---

[3] A substantial volume of electronically stored information (ESI) has been received from the Department of Justice (DOJ). Following the extraction of forensic images, the processing of native files, and the handling of pre-processed data, more than 1,018,000 records have been received and ingested into a document review platform for analysis. The dataset includes approximately 449,000 Bates-stamped documents, as well as an additional 569,000 un-Bates-stamped documents. These records encompass forensic collections from email accounts, laptops, and multiple electronic storage devices, including hard disk drives, USB storage devices, thumb drives, a CD-ROM, a Blu-ray disc, and an Apple iCloud account. The dataset also includes manuscripts, studies, reports, and other materials. Due to the substantial volume of data and the diversity of sources

misleading and flawed. Rather than equipping the defense with any clarity, this overwhelming and indiscriminate document dump confuses the central allegations, making it nearly impossible to prepare an adequate defense. Despite the Government's assertion that it has "specifically identified" materials analyzing the "core misrepresentations" (*id.*), what the Government has actually done is suggested that these "core allegations" (as opposed to all of the allegations) are buried somewhere within "expert analyses" scattered throughout the broader discovery, without offering any concrete direction to those analyses or identifying key documents.[4] This approach effectively shifts the burden onto Dr. Wang to sift through an avalanche of materials to find the "core" allegations and glean which expert(s) the Government is apparently referencing, from among journal editors and financially motivated short sellers of Company 1's stock, among others.

Furthermore, the Government argues that it is not necessary to identify specific statements or the "how, why, or when" of Dr. Wang's actions. (Doc. 58 at 13). However, the Government must allege the "essential" facts of the charged crimes. *United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004) ("[T]he indictment must also contain a statement of the *essential* facts constituting the offense charged.") (emphasis added). Those essential facts here include both the supposed false statements (discussed above) and the defendant's alleged involvement in the fraudulent scheme and a consideration of whether that involvement was a "substantial factor" in bringing about the

---

from which it was obtained, the processing and review of these materials are both resource-intensive and time-consuming, necessitating significant expenditures of time and cost.

[4] At the initial status conference call on August 30, 2024, when the Court inquired about whether the parties had engaged in a meet-and-confer discussion, defense counsel highlighted prior attempts to obtain further details from the Government regarding the allegations, noting that the Indictment referenced only one allegedly falsified image. In response, the Government vaguely asserted that its discovery contained a "set of expert materials" encompassing the "core allegations" related to other potential false statements. Contrary to the Government's brief, which misleadingly suggests that specific guidance was provided (Doc. 58 at 12-13), the Government offered no meaningful detail beyond this generic assertion regarding the "core allegations."

8

charged conduct. *See, e.g.*, *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 127 (D.D.C. 2014) ("To determine whether a defendant who did not actually submit a claim or make a false statement 'has caused the submission of a false claim or false statement, a court must look at the degree to which that party was involved in the scheme that results in the actual submission.'"); *United States ex rel. Scollick v. Narula*, 215 F. Supp. 3d 26, 39 (D.D.C. 2016) ("Courts should consider whether the [government] has alleged that the defendant's conduct was 'at least a *substantial* factor in causing, if not the but-for cause of, submission of false claims.'") (emphasis added).

The Indictment fails to meet this burden. It relies on vague and conclusory statements, such as "Dr. Wang *caused* to be submitted" (Doc. 1 ¶¶ 10, 14(a), (b), (d), 18, 20, 24, 25) that fail to explain *how* Dr. Wang was allegedly involved in fraudulent actions. As the Court noted in *Iqbal*, legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The Indictment does not make factual allegations—it makes empty assertions that leave essential questions unanswered: Did Dr. Wang personally insert fabricated data into the Proposals? Did he direct others to include false results? Did he instruct colleagues or subordinates to submit the proposals on his behalf? Did he even take part in reviewing the materials before they were submitted? Did he have any ability to sign off on the grant proposals? What, specifically, was his role in "causing" these submissions?

The Government's failure to provide specific, concrete details is particularly problematic when applied to the causation requirement for its aiding and abetting theory. *See* 18 U.S.C. § 2; *In re § 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 422 (D.S.C. 2010) ("Causation is an essential element of an aiding and abetting claim as the plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." (citing *Neilson v. Union*

9

*Bank of Cal.*, N.A., 290 F. Supp. 2d 1101, 1135 (C.D. Cal. 2003))). Under the aiding and abetting statute, the Government is obligated to prove that Dr. Wang engaged in an affirmative act that directly furthered the commission of the underlying offense. *See United States v. Everett,* 91 F.4th 698, 712 (4th Cir. 2024*)* ("To prove aiding and abetting, the prosecution must establish that the defendant (1) took an *affirmative act in furtherance* of the underlying offense and (2) did so with the intent of facilitating the offense's commission.") (emphasis added); *First Fin. Sav. Bank v. Am. Bankers Ins. Co.*, No. 88-33-CIV-5-H, 1990 U.S. Dist. LEXIS 18860, at *17 (E.D.N.C. July 5, 1990) (defining "substantial assistance" for an aider and abettor as requiring more than nominal or routine assistance and, in cases of inaction, requiring proof that the alleged aider-abettor consciously intended to facilitate the wrongful act). The Government's vague allegations do not meet this standard. The Indictment provides no facts to substantiate the claim that Dr. Wang played any role—let alone a central one—in the alleged fraudulent activities. Dr. Wang was never an employee of Company 1, nor did he have any formal role in the submission of NIH grants or other related filings. As an independent consultant, he operated at arm's length from Company 1, further negating any claim that his actions could have influenced or "caused" the submission of grants or fraudulent representations. Additionally, his physical location in New York, far removed from Company 1's operations, only serves to reinforce this lack of connection between Dr. Wang and the alleged submissions in question. The Indictment's passive, unclear, and unsupported actions fall far short of establishing the affirmative conduct required to meet the causation and intent standards under 18 U.S.C. § 2.

      Rather than providing clarity, the Government deflects by accusing the defense of "refusing to accept the facts" of the Indictment. (Doc. 58 at 3, 6, 8, 13, 14). This is a diversion. The issue is not the refusal to accept facts; it is the complete lack of facts in the Indictment itself. The

Government offers no detailed account of Dr. Wang's actions—only broad, unfounded claims dancing around the issue. Without specifying the *how*[5] of Dr. Wang's alleged involvement, the Indictment fails to provide notice of the charges and denies him the opportunity to properly prepare his defense.

In light of the deficiencies outlined above, if the Government asserts that all of this information is contained within the discovery, it must provide a bill of particulars. *Sampson*, 448 F. Supp. 2d at 696 ("The purpose of a bill of particulars 'is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial.'" (quoting *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985))). A bill of particulars would force the Government to clearly outline the specific allegations it intends to rely upon at trial, identifying the particular statements or actions that Dr. Wang allegedly made or participated in, as well as *how* he contributed to the alleged fraudulent scheme.[6] *Id.* ("In the case of fraud . . . it is critical that the government identify in the indictment the dates of the fraudulent

---

[5] The Government's reliance on its allegations of "how," "why," and "when" still fails to address the fundamental question of *how Dr. Wang caused the submission of fraudulent grant proposals.* Alleging that the results of his research were falsified, that he *contributed* to grant applications, or that he was listed as a sponsor investigator merely establishes a general association with the submissions, not causation.

[6] In *United States v. Elbaz*, this Court ruled that the government's production of 2.5 million pages of discovery, along with a general index, was insufficient for the defendant to adequately prepare a defense. *United States v. Elbaz*, 332 F. Supp. 3d 960, 981, 982-83 (D. Md. 2018). The Court found that the index failed to specifically identify the false statements allegedly made by the defendant in furtherance of the wire fraud. *Id.* at 983. As a result, the Court ordered the government to provide a bill of particulars listing the specific false statements, including the dates and recipients. *Id.* at 982-83. The facts in our case are strikingly similar. The Government has produced over a million documents, that certainly amount to millions of pages, accompanied by an initial 6-page index, followed by an additional 4-page index that adds little, both of which fail to identify the specific false statements at issue (or much else, for that matter). As in *Elbaz*, the index lacks the necessary specificity for Dr. Wang to prepare his defense. Therefore, like the defendant in *Elbaz*, Dr. Wang should be entitled to a bill of particulars to clarify which specific statements the Government intends to rely on at trial.

conduct, the specific fraudulent documents, and the fraudulent statements within the documents." (citing *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (holding the trial court erred in failing to require government to specify documents which were falsified pursuant to request for bill of particulars))). Without this clarification, the Government is left to rely on vague and conclusory allegations, which are insufficient to meet the requirements of the Sixth Amendment and due process. If the Government cannot provide this information in the form of a bill of particulars, it should be deemed a deficiency in the Indictment itself, warranting dismissal or at the very least a more detailed response.[7]

## CONCLUSION

For these reasons, Dr. Wang respectfully requests that this Court dismiss the Indictment in its entirety or, in the alternative, direct the Government to file a bill of particulars.

---

[7] For any arguments not addressed in this reply, Dr. Wang incorporates by reference the arguments made in his opening brief.

Dated: November 26, 2024

Respectfully submitted,

 */s/ Joanne Zimolzak*
Joanne Zimolzak (19342)
DYKEMA GOSSETT PLLC
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8600
jzimolzak@dykema.com

Jennifer L. Beidel (*Pro Hac Vice*)
Mark Chutkow (*Pro Hac Vice*)
Timothy Caprez (*Pro Hac Vice*)
Emma Blackwood (*Pro Hac Vice*)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
Email: jbeidel@dykema.com
mchutkow@dykema.com
tcaprez@dykema.com
eblackwood@dykema.com

*Counsel for Dr. Hoau-Yan Wan*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November, 2024, I filed the foregoing Reply in Support of Defendant Hoau-Yan Wang's Motion to Dismiss the Indictment using the Court's CM/ECF system. The CM/ECF system sent a "Notice of Electronic Filing" to all counsel of record who have entered an appearance in this matter.

 */s/ Joanne Zimolzak*
Joanne Zimolzak