# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 8:24-CR-211-TDC |
| | ) | |
| HOAU-YAN WANG, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT HOAU-YAN WANG'S REPLY
## IN SUPPORT OF HIS MOTION TO SUPPRESS

Joanne Zimolzak (19342)
DYKEMA GOSSETT PLLC
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8600
jzimolzak@dykema.com

Jennifer L. Beidel (*Pro Hac Vice*)
Mark Chutkow (*Pro Hac Vice*)
Timothy Caprez (*Pro Hac Vice*)
Emma Blackwood (*Pro Hac Vice*)
DYKEMA GOSSETT PLLC
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
Email: jbeidel@dykema.com
mchutkow@dykema.com
tcaprez@dykema.com
eblackwood@dykema.com

*Counsel for Dr. Hoau-Yan Wang*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF DISPUTED AND UNDISPUTED FACTS ...................................... 1

   A.   Undisputed Facts of the First Custodial Interrogation ............................................. 1

   B.   Disputed Facts of the First Custodial Interrogation ................................................. 3

   C.   Disputed and Undisputed Facts Regarding the Search Warrant ............................. 4

   D.   Disputed and Undisputed Facts of the Second Custodial Interrogation ................. 4

ARGUMENT ................................................................................................................. 5

   A.   The FBI's Interrogations of Dr. Wang were Custodial and Evidence Stemming from Them Should be Suppressed ......................................................................... 6

   B.   If the Court Considers the Government's Proposed Facts, an Evidentiary Hearing is Required .......................................................................................................... 9

   C.   Derivative Evidence Should be Suppressed as Fruits of the Poisonous Tree ........ 10

CONCLUSION ........................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v Arce,*
  49 F.4th 382 (4th Cir. 2022) ...................................................................................... 10

*United States v. Chen Song,*
  544 F. Supp. 3d 929 (N.D. Cal. 2021) .......................................................................... 6

*United States v. Colonna,*
  511 F.3d 431 (4th Cir. 2007) ........................................................................................ 6

*United States v. Craighead,*
  539 F.3d 1073 (9th Cir. 2008) ...................................................................................... 6

*United States v Culotta,*
  413 F. 2d 1343 (2nd Cir. 1969) .................................................................................... 6

*United States v Griffin,*
  811 F. App'x 815 (4th Cir. 2020) ............................................................................... 10

*United States v. Hashime,*
  734 F.3d 278 (4th Cir. 2013) ........................................................................................ 8

*United States v. Juan,*
  No. 2:20-cr-00134, 2021 U.S. Dist. LEXIS 102891 (E.D. Cal. June 1, 2021) ............ 6

*United States v. Knowles,*
  No. 2:15-875-RMG, 2016 U.S. Dist. LEXIS 163813 (D.S.C. Nov. 28, 2016) ............ 6

*United States v Nielsen,*
  640 F. App'x 224 (4th Cir. 2016) .............................................................................. 7, 8

*United States v Robinson,*
  153 F. Supp. 2d 188 (E.D.N.Y. 2001) .......................................................................... 8

*United States v. Stinson,*
  No. 17-cr-211, 2018 WL 2172510 (E.D. Va. May 9, 2018) ...................................... 7, 8

*United States v. Wilson,*
  No. 21-cr-00360-LKG, 2023 U.S. Dist. LEXIS 117845 (D. Md. July 7, 2023) .......... 6

## INTRODUCTION

The Government showed no concern for the constitutional rights of Defendant Hoau-Yan Wang ("Dr. Wang") when it interrogated him while he was functionally in custody without a lawyer, deflecting Mrs. Wang's repeated inquiries regarding Dr. Wang's right to counsel, and even continuing to question Dr. Wang after he requested an attorney. Yet now, the Government hopes to avoid an evidentiary hearing in which the tables are turned and its own interrogators must answer questions regarding whether they crossed constitutional boundaries.

The Government's Response in Opposition to Defendant Hoau-Yan Wang's Motion to Suppress (the "Response") actually highlights key undisputed facts and case law supporting Defendant Hoau-Yan Wang's Motion to Suppress (the "Motion to Suppress"). To the extent the Response has credibly proposed material facts contradicting those set forth by Dr. Wang in his Motion to Suppress, the Court must hold an evidentiary hearing.

## STATEMENT OF DISPUTED AND UNDISPUTED FACTS

The Government does not dispute many troubling facts surrounding the collection of evidence described in the Motion to Suppress. Where the Government does dispute facts, the Government largely appears to substitute its own self-serving, mostly unsourced conjecture for Mrs. Wang's sworn statements about what Dr. Wang and she observed and understood.

### A.    *Undisputed Facts of the First Custodial Interrogation*

The Government does not dispute that on August 23, 2021, two armed FBI agents staged a late-night interrogation of Dr. Wang at his home regarding allegations made in a Citizen Petition filed five days earlier by financially conflicted short-sellers of Company 1's stock. (The Government does not explain why it orchestrated this encounter to take place at the bedtime of an elderly couple, rather than at a more ordinary hour for a non-violent, non-emergency financial investigation.) There is no apparent dispute as to the position and circumstances in which those

armed agents found Dr. Wang upon entering his home for that interrogation: he was six weeks removed from kidney surgery, suffering from related kidney ailments and unrelated eye conditions, in the middle of readying himself for bed, and surprised and confused about the agents' presence and purpose.

The Government does not appear to dispute that the FBI agents misled Dr. and Mrs. Wang about the nature and expected length of the interrogation, representing that they only had "a few questions" about an investigation of Company 1, before ultimately questioning Dr. Wang for nearly two hours and then serving him with a subpoena couched in a threat that he would have to appear in Washington D.C. if he did not produce all the files demanded.

It is also undisputed that the FBI never provided Dr. Wang with *Miranda* warnings. The Government never informed Dr. Wang that he was not required to participate in the interrogation or that he could refuse the agents' entry into his home. The agents do not dispute that they never told Dr. Wang he could have an attorney present, terminate the interrogation, or leave at any time. Nor does the Government refute that the FBI agents interrogating Dr. Wang failed to offer or provide any support for Dr. Wang's language barriers, via interpreter or otherwise,[1] or attempt to accommodate his age or medical issues, as they maintained constant questioning, without a break, despite Dr. Wang having told them about his advanced age and medical issues. (*See* Doc. 49 at 20).

There is, additionally, no dispute that the FBI agents expressly discouraged Dr. Wang's consideration of involving an attorney in the August 23, 2021 interrogation or in their later

---

[1] The Government appears to misrepresent Dr. Wang's fluency in English, ignoring communications between Defendant's counsel, the Government, and this Court, where Defendant's counsel made clear that an interpreter would be needed in the event Defendant was going to participate in the initial status conference for this matter.

encounters with him, telling Dr. Wang that an attorney was not necessary when Mrs. Wang inquired about legal counsel for Dr. Wang and later admonishing Dr. Wang and his wife to not tell *anyone* about their visit, while simultaneously telling the Wangs that lawyers were expensive.

### B.    *Disputed Facts of the First Custodial Interrogation*

In addition to the undisputed facts above, the Government, in its Response, offers various unsupported, unsourced facts that ostensibly contradict Dr. Wang's depiction of the agents' entry into the home, the layout and conditions of the single room in which the interrogation took place, and the degree of control the agents exerted over Dr. and Mrs. Wang. (Doc. 49 at 4-6; Doc. 58 at 2-3). Dr. Wang maintains that the agents entered the home uninvited; the Response appears to contradict this by stating, without evidentiary support, that the agents were "allowed" inside. (Doc. 49 at 4-5; Doc. 58 at 2). Much of how the interrogation was stage-managed by the FBI once inside the Wangs' modest home appears to be in dispute as well, as the Government offers alternative facts, again without attribution, to Mrs. Wang's description of her husband having been directed where to sit by the armed agents who then blocked his only available exit from the room. (Doc. 49 at 4-5; Doc. 58 at 2).

Additionally, the Government's Response incredibly asserts, without sourced substantiation, that "the agents did not ask—and the Defendant did not make statements—about any electronic devices that he used in the course of his scientific work." (Doc. 49 at 4-7; Doc. 58 at 3). This is directly contradicted by evidence that the agents questioned Dr. Wang about: (a) his research activities using University 1 hardware and software; (b) whether he maintained certain data on removable storage devices and a personal computer at his home; and (c) his use of a personal Gmail account to transmit data. (Doc. 49 at 6-7).

Lastly, the Government's Response ignores Dr. Wang's description of Agent Weeks' efforts to continue to press Dr. Wang to comply with production demands made during the first

interrogation and in the subpoena, via frequent telephone calls where Agent Weeks insisted that Dr. Wang provide additional documentation in confidence, without informing anyone else. In fact, the Response goes so far as to complain that Dr. Wang did not reference such telephone calls in his motion, when they were clearly discussed as described. (Doc. 49 at 6; Doc. 58 at 3). Whether these telephone calls were compulsory or voluntary is among the factual considerations in dispute here and requires consideration of the fact that Agent Weeks directed Dr. Wang to undertake such actions without speaking to anyone else (implicitly including a lawyer) if he wanted to avoid traveling to Washington, D.C. to appear in federal court. Agent Weeks' direction is even more serious given the fact that Dr. Wang was six weeks post-surgery and was not in any condition to travel.

C.      ***Disputed and Undisputed Facts Regarding the Search Warrant***

Outside of the Government proposing that there was somehow no discussion "about any electronic devices used in the course of [Dr. Wang's] scientific work" during the FBI's first interrogation of him, the Government does not appear to dispute that the search warrant: (1) was based, at least in part, on information and materials Dr. Wang electronically provided the FBI in connection with the initial interrogation; (2) makes clear that Dr. Wang was personally under investigation at the time of that interrogation; and (3) authorized the search of Dr. Wang's home for electronic devices and other records related to his research activities. (Doc. 49 at 6-10; Doc. 58 at 4-5).

D.      ***Disputed and Undisputed Facts of the Second Custodial Interrogation***

The Government does not dispute that the FBI did not advise Dr. Wang of his *Miranda* rights during the September 9, 2021 interrogation. The Government also appears to acknowledge that the FBI purposefully initiated this second interrogation outside of Mrs. Wang's presence at a time she was known to be at work. Once Mrs. Wang arrived home, and objected to more

questioning of her husband without a lawyer present, several armed FBI agents entered the home and executed the search warrant. (Doc. 49 at 7-10; Doc. 58 at 4-5). The Government does not appear to dispute the defense's description of the Wangs' repeated inquiries about their need for counsel, the agents' obfuscation and discouragement of the request, and Agent Weeks' selective audio/video recording of the interrogation. (*Id.*). Nor does the Government dispute that Dr. Wang suffered significant emotional trauma during and following the interrogations.

Regarding the substance of the second interrogation, outside of Dr. Wang and the Government both noting that Agent Weeks accused Dr. Wang of lying, their versions of events starkly differ in many ways, including with respect to what Dr. Wang's Motion to Suppress describes as, among other things: (1) FBI positioning and effective blocking of Dr. Wang during questioning; (2) Agent Weeks' sarcastic and accusatory comments; (3) Agent Weeks' hostile, intimidating, aggressive and combative behavior and actions; (4) the continued interrogation of Dr. Wang during and following his wife's inquiries regarding the need for counsel; and (5) the continued interrogation of Dr. Wang after his unequivocal request for counsel. (*Id.*). As with the initial interrogation, Dr. Wang has cited sources to substantiate his description of the second interrogation, while the Government has not.

## **ARGUMENT**

This Motion is based on the Fifth Amendment's prohibition of custodial interrogations without the implementation of *Miranda* safeguards. Both the Government and Dr. Wang agree that this Court's determination of whether Dr. Wang was in custody at the time the FBI collected evidence should be based on whether a reasonable person in Dr. Wang's position would have believed he was in custody. This is a determination for which the Fourth Circuit has utilized a "totality of circumstances" test that takes into account factors, such as: the time, place and purpose

of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the presence of multiple officers; the potential display of a weapon by an officer; and the defendant's age, language difficulties, citizenship, and experience with the American justice system. Yet, the Government argues that the Court can assess the totality of circumstances here without an evidentiary hearing, a contention that Dr. Wang strongly opposes.

**A.**  ***The FBI's Interrogations of Dr. Wang were Custodial and Evidence Stemming from Them Should be Suppressed.***

There are many commonalities between the underlying facts and circumstances of Dr. Wang's interrogations and the police-dominated, coercive atmospheres in Fourth Circuit cases cited in Dr. Wang's opening brief in which courts found that custodial interrogations had taken place.[2] Hoping to avoid these cases, the Government tries to align this case instead with situations in which law enforcement was amicable and non-threatening in a relaxed environment of the defendant's home. (Doc. 58 at 9, 12). Here, during both in-person interrogations, Dr. Wang was directed by armed agents where to go and sit in his home, effectively blocking his exit from the room. He was continually subjected to hostile questioning for an extended period of time, including accusations and sarcastic remarks about his national origin. He and his wife were both ignored or dissuaded when they made repeated requests about the need for legal representation. The Government admits that Agent Weeks repeatedly accused Dr. Wang of lying, and then attempts to claim that because he denied he was lying, he could not have been in custody. (Doc. 58 at 3). Agent Weeks did not create an amicable, non-threatening atmosphere.

---

[2] *See, e.g., United States v. Hashime*, 734 F.3d 278 (4th Cir. 2013); *United States v. Colonna*, 511 F.3d 431 (4th Cir. 2007); *United States v. Wilson*, No. 21-cr-00360-LKG, 2023 U.S. Dist. LEXIS 117845 (D. Md. July 7, 2023); *United States v. Knowles*, No. 2:15-875-RMG, 2016 U.S. Dist. LEXIS 163813 (D.S.C. Nov. 28, 2016); *accord United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008); *United States v. Chen Song*, 544 F. Supp. 3d 929 (N.D. Cal. 2021); *United States v. Juan*, No. 2:20-cr-00134, 2021 U.S. Dist. LEXIS 102891 (E.D. Cal. June 1, 2021).

As a result, the case law upon which the Government relies could not be more different from the scenario Dr. Wang found himself in. (*See id.* at 10 (citing *United States v. Nielsen*, 640 F. App'x 224 (4th Cir. 2016); *see also id.* at 12 (citing *United States v. Stinson*, No. 17-cr-211, 2018 WL 2172510, at *4 (E.D. Va. May 9, 2018))). In the first case cited by the Government, *Neilsen*, the defendant was free to move about his residence and the interviewer had a "generally empathetic tone." *Nielsen*, 640 F. App'x 224, at 228. In contrast, here, Dr. Wang endured aggressive questioning and accusations of lying delivered in a sarcastic tone. In fact, the court in *Nielsen* recognized the absence of certain factors in that case, which exist here—namely, the search of a home during questioning, prolonged and late-night interrogations, and the failure to inform the defendant of his rights. The presence of these factors were exacerbated by Dr. Wang's vulnerability as a foreign-born person unfamiliar with both the American legal system and his constitutional rights, not to mention the fact that he had to endure this prolonged questioning in his bed clothes. This environment did not merely suggest custody – it rendered the situation a coercive detention. Dr. Wang's rights were violated, and his interrogation amounted to an exploitation of his constitutional rights.

In the Government's second case, *Stinson*, law enforcement conducted a fully recorded interview of the defendant in a place of his choosing within his home about his involvement in a foreign child sexual exploitation ring. This happened after law enforcement first questioned the defendant outside his home in a manner that enabled him to anticipate their return (causing him to run a file deletion program in the interim). Moreover, the defendant's wife offered an "internally inconsistent" version of events that was so "far-fetched" that the court "could only conclude that" the defendant and his wife "concocted their perjurious story." *Stinson*, 2018 U.S. Dist. LEXIS 79752, at *3, 8, 11. Further, the defendant in *Stinson* was clearly aware of his rights, as evidenced

by his ability to end the initial interview and voluntarily reengage with the agents, and the officers' clear indication that he was not under arrest. *Id.* at *3-4, 7-8. Dr. Wang's interrogation stands in sharp contrast, as he was stripped of autonomy with agents controlling every aspect of his interaction with them, including where he could sit. Dr. Wang was unaware of his rights and not informed that he was not under arrest and far from destroying documents, he provided them at the Agents' direction after the interrogation. Magnifying this coercive environment was the fact that Dr. Wang grew up in an authoritarian regime in Taiwan, where the fear of forced disappearances and state control over citizens' lives has been a painful reality. In further contrast to *Stinson,* the Government here did not record Dr. Wang's full interrogation, and the only available footage shows one of the agents discouraging Dr. Wang from seeking counsel, while the other claims it is possible but expensive and inconvenient to involve lawyers. (Doc. 49 at 8).

Given the far more coercive circumstances in Dr. Wang's case, compared to *Nielsen* and *Stinson*, Dr. Wang's situation is distinguishable from them and the other cases cited by the Government. *See, e.g.*, *Stinson*, 2018 U.S. Dist. LEXIS 79752, at *3, 8, 11; *Neilsen*, 640 F. App'x 224, at 226; *United States v. Robinson*, 153 F. Supp. 2d 188 (E.D.N.Y. 2001) ("ordering a suppression hearing to determine the voluntariness of the defendant's statements to law enforcement because the parties disputed whether the defendant voluntarily waived his Miranda rights"). What's more, even in the cases cited by the Government, the court ordered an evidentiary hearing.

Dr. Wang respectfully requests that the Court find that the totality of the circumstances indicates he was in custody at the time of the interrogations, necessitating suppression of the resulting evidence.

**B.    *If the Court Considers the Government's Proposed Facts, an Evidentiary Hearing is Required.***

Given the Government's arguments that contradict the facts set forth by Dr. Wang in his Motion to Suppress, an evidentiary hearing is required so that the Court can analyze the veracity of those arguments. For example, the Government, without citing its sources, makes the following factual assertions, which Dr. Wang strongly disputes:

a.    Everyone sat down where they wanted and Dr. Wang was free to leave the interview from different exits during the entirety of the interview (Doc. 58 at 2);

b.    The agents were professional, courteous, and polite (*id.* at 2);

c.    The agents' questions were not hostile or sarcastic, and they maintained a calm, professional, and conversational tone without resorting to deceit or trickery (*id.* at 5, 7, 9, 11);

d.    Dr. Wang gave untruthful statements to the agents[3] (*id.* at 3, 9); and

e.    After Dr. Wang requested an attorney, all FBI questioning of him stopped (*id.* at 5).

After making these factual allegations, the Government argues that the factual discrepancies are immaterial because even assuming *some of* the facts alleged by Dr. Wang to be true, they do not rise to the level of legal custody. However, this view ignores that the Court must look at the totality of the circumstances when assessing custody. The Government has omitted from its apparent concession numerous material facts about the police-dominated atmosphere at issue – ranging from Dr. Wang's age, national origin, health and unfamiliarity with the American justice system to the agents' words, demeanor, tactics, and demands for continued secrecy. The Government's claim that whether Dr. Wang was in custody is a legal issue rather than a factual one is inaccurate – custody is inherently a fact-driven determination, and the Court should order

---

[3] The Government's insistence that Dr. Wang's statements were untruthful illustrate both the language barrier in this case and the FBI agent's lack of scientific expertise, both of which would be further elucidated at an evidentiary hearing.

an evidentiary hearing. *United States v. Arce*, 49 F.4th 382, 389 (4th Cir. 2022) ("Whether an individual is in custody is a fact-specific . . . inquiry.").

Nor do the cases cited by the Government change the fact that an evidentiary hearing is required so the Court can assess the totality of the circumstances. Unlike *Griffin*, where the defendant's account was corroborated by the prosecution's discovery documents, the Government's interview notes are incomplete and contradicted by Mrs. Wang's recollection of the interrogations, underscoring the need for a hearing to resolve these factual discrepancies. *United States v. Griffin*, 811 F. App'x 815, 817-18 (4th Cir. 2020). And, unlike in *Culotta*, where the appellant's motion relied on minimal factual allegations that were insufficient to justify an evidentiary hearing, Dr. Wang's filings provide detailed and substantial factual allegations that warrant further judicial examination. *See United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969).

Given the apparent dispute over the facts, the Court should order an evidentiary hearing.

## C.    *Derivative Evidence Should be Suppressed as Fruits of the Poisonous Tree.*

The Government essentially argues that, even if the FBI agents did violate Dr. Wang's constitutional rights during their August 23, 2021 interrogation, the search warrant they obtained was untainted by this violation because the Government *mostly* based its warrant application on evidence extracted during later telephone conversations with Dr. Wang. (Doc. 58 at 4). There are a number of factual and legal flaws with this position.

First, the Government fails to account for the fact that the follow-up telephonic questioning of Dr. Wang was entirely informed by, and derived from, the first unconstitutional interrogation. Any information derived from the telephone calls or the second interrogation would therefore be fruit of the poisonous tree. Second, the Government's alternative argument undercuts its desire to avoid an evidentiary hearing. To the extent the Court is satisfied that the Government's

representations may have merit, the Court will need to hear about and examine evidence the Government used when obtaining the search warrant to determine whether it truly was independent of the first custodial interrogation. This is especially true because the Government has not cited sources for its representations.

## <u>CONCLUSION</u>

Dr. Wang respectfully requests that this Court issue an Order suppressing all statements and information provided by Dr. Wang in response to the FBI's interrogations on August 23 and September 9, 2021, including documents Dr. Wang provided to the FBI between those interrogations and during the second interrogation, and documents seized pursuant to the search warrant executed on September 9, 2021. In the alternative, Dr. Wang requests an evidentiary hearing at which he can develop evidence regarding the custodial nature of the interrogations at issue.

Dated: November 26, 2024                    Respectfully submitted,

                                            _/s/ Joanne Zimolzak_
                                            Joanne Zimolzak (19342)
                                            DYKEMA GOSSETT PLLC
                                            1301 K Street NW
                                            Suite 1100 West
                                            Washington, D.C. 20005
                                            (202) 906-8600
                                            jzimolzak@dykema.com

                                            Jennifer L. Beidel (*Pro Hac Vice*)
                                            Mark Chutkow (*Pro Hac Vice*)
                                            Timothy Caprez (*Pro Hac Vice*)
                                            Emma Blackwood (*Pro Hac Vice*)
                                            DYKEMA GOSSETT PLLC
                                            39577 Woodward Avenue
                                            Suite 300
                                            Bloomfield Hills, MI 48304
                                            (248) 203-0700
                                            Email: jbeidel@dykema.com
                                            mchutkow@dykema.com
                                            tcaprez@dykema.com
                                            eblackwood@dykema.com

                                            *Counsel for Dr. Hoau-Yan Wang*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of November, 2024, I filed the foregoing Defendant Hoau-Yan Wang's Reply in Support of His Motion to Suppress using the Court's CM/ECF system. The CM/ECF system sent a "Notice of Electronic Filing" to all counsel of record who have entered an appearance in this matter.

*/s/ Joanne Zimolzak*
Joanne Zimolzak
