UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

HOAU-YAN WANG,

Defendant.

Criminal Action No. TDC-24-0211

## MEMORANDUM OPINION

Defendant Dr. Hoau-Yan Wang is charged in a four-count Indictment with major fraud against the United States, in violation of 18 U.S.C. §§ 1031(a) and 2 ("Count 1"); two counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 ("Counts 2 and 3"); and one count of making false statements in a matter within the jurisdiction of the United States government, in violation of 18 U.S.C. §§ 1001(a)(2) and 2 ("Count 4"). Dr. Wang has filed a Motion to Dismiss the Indictment, in which he also requested a bill of particulars. After the Motion was fully briefed, the Court held a hearing on the Motion on December 17, 2024. For the reasons set forth below, the Motion to Dismiss the Indictment will be DENIED.

## BACKGROUND

The Indictment alleges the following facts relevant to the Motion, which the Court accepts as true for purposes of the Motion.

Dr. Hoau-Yan Wang, a resident of Philadelphia, Pennsylvania, worked as a tenured medical professor at City University of New York ("CUNY") School of Medicine, at which he taught students and ran a laboratory that conducted neuroscience research. Since 2005, Dr. Wang has also served as a paid advisor and consultant to Cassava Sciences, Inc. ("Cassava"), a publicly

traded biopharmaceutical company based in Austin, Texas, which focuses on the development of a drug intended to treat Alzheimer's disease ("Drug A")and a test to detect that disease ("Test A").

The Indictment generally alleges that from May 2015 through April 2023, Dr. Wang contributed to, reviewed, approved, and caused to be submitted to the National Institutes of Health ("NIH") grant applications that included false and fraudulent representations relating to purported scientific research on Drug A and Test A in order to obtain funding for Cassava and himself. In particular, the grant proposals included certain fraudulent images purporting to be the results of the "Western Blot Technique," used to detect a specific protein in a biological sample, in which the relative amount of the protein was represented by the thickness or darkness of a band in the image. Indictment ¶¶ 9-10, 14, ECF No. 1. The Indictment alleges that Dr. Wang fabricated and falsified the results of his scientific research, including by manipulating data and images of Western blots to artificially add bands, subtract bands, and change their relative thickness or darkness and then draw conclusions from the falsified results that were not based upon truthful scientific testing. As a result of the fraudulent applications, which were submitted in relation to five different grants ("Grants 1, 2, 3, 4 and 5"), NIH awarded Cassava approximately $16 million in funding from 2017 to 2021. Dr. Wang used some of the NIH grant proceeds to fund his laboratory and continued research.

Count 1 of the Indictment charges Dr. Wang with major fraud against the United States, in violation of 18 U.S.C. §§ 1031(a) and 2, and alleges that he:

> [D]id knowingly execute, and attempt to execute, a scheme and artifice with the intent to defraud the United States and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that such pretenses, representations, and promises were fraudulent when made, in a grant, contract, subcontract, subsidy, guarantee, insurance, and other form of Federal assistance, the value of such grant, contract, subcontract, subsidy, guarantee, insurance, and form of Federal assistance, and any constituent part thereof, being $1,000,000 or more.

Indictment ¶ 29.

The specific fraudulent act identified in Count 1 is the submission on or about January 12, 2018 of a fraudulent research proposal ("Proposal 1") to NIH. As alleged in the Indictment, Proposal 1 included a budget request for $118,975 for Dr. Wang's laboratory and listed Dr. Wang as a co-investigator. Proposal 1 allegedly contained false statements and material omissions, including a fabricated Western blot image and densitometry data that were depicted in Figure 1 in the Indictment. It also included citations to published articles that contained fabricated images. Proposal 1 was submitted in relation to Grant 2, which was awarded to Cassava and resulted in the disbursement of $3,906,146 for the development of Drug A.

Counts 2 and 3 charge Dr. Wang with two counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, in relation to the same fraudulent scheme. In these counts, the Indictment charges that on two separate occasions, Dr. Wang:

> [D]id knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signals, pictures, and sounds for the purposes of executing such scheme and artifice.

Indictment ¶ 34.

Count 2 relates to the sending of a wire transmission from NIH to the Federal Reserve Board on March 22, 2019 to initiate payments in connection with Proposal 1, in the approximate amount of $32,815. Count 3 relates to the sending of a similar wire transmission from NIH to the Federal Reserve Board on June 18, 2021 to initiate payments in connection with Proposal 2, a fraudulent proposal relating to Grant 5, in the approximate amount of $125,026.

Finally, Count 4 charges Dr. Wang with making false statements in a matter within the jurisdiction of the United States government, in violation of 18 U.S.C. §§ 1001(a)(2) and 2. The Indictment alleges that on or about November 18, 2019, "in a matter within the jurisdiction of the executive branch of the Government of the United States," Dr. Wang:

> [D]id knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, to wit: in a filed submission to NIH in connection with fraudulent Proposal 2, Wang fabricated the Western blots depicted in multiple figures and made false representations about the results of the experiments depicted.

Indictment ¶ 39.

## DISCUSSION

In the Motion to Dismiss the Indictment, Dr. Wang seeks dismissal of some or all of the counts in the Indictment on five grounds: (1) that the Indictment is defective because it fails to allege the essential element of materiality for each offense; (2) that Counts 1 and 4 are time-barred; (3) that Count 1 does not properly allege the dollar value of the major fraud, which must be over $1 million; (4) that venue is improper in this District as to Count 1; and (5) that the allegations are too vague to provide Dr. Wang with notice of the charges.

## I.    Legal Standard

Dr. Wang has filed his Motion to Dismiss under Federal Rule of Criminal Procedure 12, which states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits" and includes challenges of a failure to state an offense and improper venue. Fed. R. Crim. P. 12(b)(1), (3)(A)(i), (3)(B)(v). A court may dismiss an indictment "where there is an infirmity of law in the prosecution." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). However, it may not do so based on a "determination of facts that should have been developed at trial." *Id.* Thus, when evaluating a challenge to an indictment

4

under Rule 12, the Court must base its determination solely on the facts contained in the indictment and must accept all facts in the indictment as true. *Id.*

## II.     Materiality

Dr. Wang first argues that the Indictment is defective because it fails to allege sufficient facts to support the element of the materiality of the alleged false statements. "[A]n indictment is legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011). Generally, "an indictment is sufficient if it alleges an offense in the words of the statute, as long as the words used in the indictment 'fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e.'" *Id.* at 43–44 (quoting *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002)). Allegations consisting of a general description based on the language of a statute "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific" offense charged. *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014) (quoting *Hamling v. United States*, 418 U.S. 87, 117–18 (1974)).

For Count 1, the elements of the crime of a major fraud against the United States are: (1) the defendant knowingly and with the intent to defraud the United States government ("the Government") or to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises; (2) executed or attempted to execute a scheme with the intent to defraud the Government; (3) the scheme took place as a part of acquiring "any grant, contract, subcontract . . . or other form of Federal assistance"; and (4) the value of the grant, contract,

5

subcontract, or other form of federal assistance, "or any constituent part thereof," was $1,000,000 or more. 18 U.S.C. § 1031(a); *United States v. Whyte*, 918 F.3d 339, 350 n.13 (4th Cir. 2019).

For Counts 2 and 3, the elements of the crime of wire fraud are that: (1) the defendant knowingly devised or intended to devise a scheme to defraud or to obtain money or property by false or fraudulent pretenses; (2) the false or fraudulent pretenses were about a material fact; (3) the defendant acted with an intent to defraud; and (4) the defendant used wire communications in furtherance of the scheme. *United States v. Wynn*, 684 F.3d 473, 477–78 (4th Cir. 2012).

In Count 4, the elements of making false statements in a matter within the jurisdiction of the United States government are that: (1) the defendant made a false statement in a matter involving a federal government agency; (2) the defendant acted knowingly or willfully; and (3) the false statement was material to a matter within the jurisdiction of the agency. *United States v. Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012).

Thus, all three charged offenses require that the false statements be "material," a term which is defined as having "a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *Id.* (quoting *United States v. Littleton*, 76 F.3d 614, 618 (4th Cir. 1996)). Here, the portions of the Indictment referencing the specific counts generally track the statutory language of each of these charges and thus specifically allege that the false statements at issue were "material." Indictment ¶¶ 29, 32, 34, and 39. The Indictment also alleges material false statements multiple other times. For example, in paragraph 14(b), the Indictment alleges that Dr. Wang "made, and caused to be made, *materially* false, fraudulent, and misleading statements to NIH" and proceeds to list four types of materially false statements made. *Id.* ¶ 14(b) (emphasis added). In paragraphs 15 and 17, the Indictment alleges that "for each of the awarded projects" relating to Grant 1 and Grant 2, Dr. Wang "caused [Cassava] to submit

6

applications that contained *materially* false, fraudulent, and misleading statements about his scientific research." *Id.* ¶¶ 15, 17 (emphasis added). Furthermore, the Indictment specifically identifies as one of the allegedly material false statements "a Western blot purporting to show Drug A's mechanism of action, as depicted in Figure 1 of the submission," that was included in the January 12, 2018 submission of Proposal 1 that forms the basis of Count 1. *Id.* ¶ 18; *see also id.* ¶ 36 (incorporating paragraph 18 for purposes of the wire fraud counts). In paragraph 39, the Indictment specifically identifies the material false statements underlying Count 4 as "fabricated . . . Western blots depicted in multiple figures" in Proposal 2, submitted to NIH on November 18, 2019. *Id.* ¶ 39.

Thus, the Court finds that the Indictment adequately alleged the materiality of the false statements. Dr. Wang's arguments to the contrary largely consist of claims that there are not sufficient facts in the Indictment to establish that these statements were, in fact, material. This argument fails for two primary reasons. First, this argument improperly seeks to apply the civil standard for a motion to dismiss, which permits dismissal of a civil complaint when the facts alleged are not sufficient to support a plausible claim for relief. *See* Reply at 1, ECF No. 59 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (establishing the civil standard for a motion to dismiss) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same)). Dr. Wang's significant reliance on civil cases in support of his argument that the factual allegations are insufficient is entirely misplaced. *See, e.g.*, Mot. Dismiss at 11, ECF No. 48 (citing *United States ex rel. Berge v. Bd. of Trs.*, 104 F.3d 1453, 1462 (4th Cir. 1997) (reversing a jury verdict on a civil claim under the False Claims Act, 31 U.S.C §§ 3279–3733, based on insufficient evidence on the element of materiality)); Reply at 1 (citing *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 193 (4th Cir. 2022)). As discussed above, in a criminal case, the Indictment need not include sufficient facts

that if true would prove an element, it need only state enough facts to put the defendant on notice of the charge. *See Perry*, 757 F.3d at 171; *Brandon*, 298 F.3d at 310 (stating that an indictment is sufficient if it contains the elements of the offense charged and "fairly informs a defendant of the charge against which he must defend").

Second, even upon consideration of whether the allegations support an inference of materiality, Dr. Wang's argument effectively relies on a standard that equates materiality with actually requiring NIH to have considered the statement in its decision, when the actual definition of materiality establishes a much lower bar: that the statement "has a natural tendency to influence, or is capable of influencing, the decision-making body," *Hamilton*, 699 F.3d at 362, a standard which the references to the fabricated Western blots submitted with the proposals would clearly meet. The Court therefore finds that the Indictment sufficiently alleged the materiality of the false statements.

Dr. Wang's citation to various federal criminal cases does not alter this conclusion. At the hearing on the Motion, Dr. Wang referenced *United States v. Ismail*, 97 F.3d 50 (4th Cir. 1996), and *Kungys v. United States*, 485 U.S. 759, 763-64 (1988), in support of his claim that this Court should, in assessing whether the materiality element was sufficiently alleged in the Indictment, analyze whether the particular alleged false statements would have the potential to impact the actual decisions by the relevant government agency. In *Ismail*, however, the United States Court of Appeals for the Fourth Circuit considered whether the Government had offered sufficient evidence at trial to prove that the defendant's false statement to the Federal Deposit Insurance Corporation was material and in no way established that a court must consider the sufficiency of the alleged facts on a motion to dismiss an indictment. *Ismail*, 97 F3d at 59-60. In *Kungys*, the United States Supreme Court reviewed determinations by lower courts in civil denaturalization

8

proceedings on whether false statements made by an individual regarding his date and place of birth, wartime occupations, and wartime residence, were material to his naturalization proceedings within the meaning of the Immigration and Nationality Act of 1952. *Kungys*, 485 U.S. at 763–64, 767–72. Notably, in *United States v. Gaudin*, 515 U.S. 506 (1995), the Supreme Court clarified that the materiality analysis in *Kungys* was specific to the determination of materiality in a denaturalization proceeding and did not apply in the context of a criminal prosecution. *Id.* at 522. Indeed, the holding of *Gaudin*, in which the Supreme Court concluded that the element of materiality in a criminal charge is a mixed question of law and fact that must be decided by a jury, *id.* at 512, 522–23, aligns with the principle that the issue of whether the facts are sufficient to prove materiality in a criminal case is not to be decided at the motion-to-dismiss stage.

For these reasons, the Court finds that the Indictment adequately alleges the element of materiality. The Motion will be denied as to this issue.

## III.    Statute of Limitations

Dr. Wang next argues that Count 1, alleging a major fraud against the United States, and Count 4, alleging false statements in a matter within the jurisdiction of the United States government, are time-barred by the applicable statutes of limitations. As relevant here, the Indictment was returned on June 27, 2024. The parties also entered into a series of pre-Indictment tolling agreements, under which the limitations period was tolled for all but two days between February 5, 2024 and June 22, 2024.

### A.    Count 1

As to Count 1, the statute of limitations for the crime of major fraud against the United States, is seven years "after the offense is committed." 18 U.S.C. § 1031(f). Thus, factoring in the tolling agreement, Count 1 is timely if it accrued on or after February 12, 2017. Because Count

9

1 alleges that Dr. Wang committed the offense on or about January 12, 2018, when Proposal 1 was submitted to the NIH, Count 1 charges an offense that occurred within the seven-year statute of limitations.

Despite the facially sufficient allegation, Dr. Wang argues that the submission of Proposal 1 in January 2018, which he asserts was actually perpetrated by Cassava or a Cassava official, could not constitute the commission of the crime of a major fraud against the United States by him because his involvement with the allegedly fraudulent statement, consisting of the Western blot image in Figure 1 of Proposal 1, was limited to his creation of the image sometime prior to 2017. The Indictment, in fact, alleges that the Western blot image in Figure 1 was originally published in a 2017 article that was submitted in conjunction with the application for Grant 1.

In support of his argument, Dr. Wang relies on *United States v. Reitmeyer*, 356 F.3d 1313 (10th Cir. 2004), in which the court held that the major fraud crime "punishes each 'execution' or 'attempted execution of a scheme' rather than the scheme in its entirety or each act in furtherance of a scheme," and that, as a result, the crime is "not a 'continuing offense' for statute of limitations purposes." *Id.* at 1323–24. The court therefore found that the defendant executed the scheme, and the statute of limitations therefore began to run, when the defendant submitted the allegedly false claim seeking an equitable adjustment, not at the time of a subsequent meeting with the United States Army Corps of Engineers conducted in order to promote and support the initial false claim, which the court found was not an execution of the scheme but was instead "merely an act in furtherance" of the scheme to defraud. *Id.* at 1325. As a result, Dr. Wang contends that the statute of limitations for his alleged commission of a major fraud against the United States began to run when he created the Western blot image, or perhaps when he sent it to Cassava sometime after its creation, but not as of the submission of Proposal 1 by others in January 2018.

10

The Government, however, is not relying on a theory that the major fraud was a continuing offense. Although the Indictment describes pre-2018 activity in which Dr. Wang allegedly used the Western blot image to engage in fraud in relation to Grant 1, Count 1 specifically alleges that the fraud was the submission on January 18, 2018 of Proposal 1, which included the Western blot image, as part of the efforts to obtain Grant 2. As alleged, that submission was plainly an execution of a scheme to defraud, not a mere act in furtherance of a scheme such as the follow-on meeting to an earlier fraudulent submission described in *Reitmeyer*. *Reitmeyer*, 356 F.3d at 1325; *cf. United States v. Jefferson*, 674 F.3d 332, 367 (4th Cir. 2012) (in the analogous context of mail or wire fraud, where the statute likewise targets the defendant's "execution" of a scheme to defraud, finding that "each mailing or wire transmission in furtherance of the fraud scheme constitutes a separate offense, and it may be separately punished"). The fact that the allegedly fraudulent Western blot image may have been created at an earlier date or submitted with an earlier grant application does not prevent the submission of separate grant application or proposal containing the same false statement from constituting a separate crime.

Although Dr. Wang also claims that he had no role in the submission of Proposal 1, the Indictment sufficiently alleges Dr. Wang's personal involvement by asserting that he "did knowingly execute" this scheme to defraud "knowing that the pretenses, representations, and promises were false and fraudulent when made," Indictment ¶ 32, and by specifically alleging that Dr. Wang "caused to be submitted to NIH" Proposal 1, which listed him as a co-investigator, included a budget request of $118,975 for his own work at CUNY, and contained false statements and material omissions including the Western blot in Figure 1, *id.* ¶ 18. Thus, while Dr. Wang may disagree that he actually caused the submission of Proposal 1 or had knowledge of false statements contained in it, and the Government certainly will have to prove such facts at trial, the

11

Indictment sufficiently alleges that he committed the crime of a major fraud against the United States on or about January 12, 2018, a date that is undisputedly within the applicable limitations period. *See Perry*, 757 F.3d at 171 (stating that an indictment is sufficient if it sets forth all of the elements of the offense and informs the accused of the specific offense charged); *Engle*, 676 F.3d at 415 (requiring the court to consider the allegations in the indictment to be true when considering a motion to dismiss). The Motion will therefore be denied as to the statute of limitations argument relating to Count 1.

**B.     Count 4**

Where Dr. Wang relies on the same argument in asserting that Count 4 is time-barred, the Court finds that it fails for the same reasons. The parties agree that the statute of limitations for the charged offense of making false statements in a matter within the jurisdiction of the United States government is five years. *See* 18 U.S.C. § 3282(a). Count 4 charges Dr. Wang with knowingly and willfully making materially false, fictious, and fraudulent statements and representations to NIH when he "fabricated the Western blots depicted in multiple figures and made false representations about the results of the experiments depicted" in the "filed submission to NIH in connection with fraudulent Proposal 2" on or about November 18, 2019. Indictment ¶ 39. The Indictment also alleges that Dr. Wang "caused to be submitted to NIH" Proposal 2, which identified him as a co-principal investigator, listed his laboratory as one of the locations for scientific testing, and included Western blots "fabricated by Wang" and other false statements and material omissions. *Id.* ¶ 25.

Generally, a single submission containing one or more false statements can establish a violation of 18 U.S.C. § 1001. *See* 18 U.S.C. § 1001(a)(2) (prohibiting "any materially false, fictitious, or fraudulent statement or representation"); *United States v. Smith*, 54 F.4th 755, 764–

12

66 (4th Cir. 2022) (noting that 18 U.S.C. § 1001 covers "any . . . statement or representation" "in the singular" and that it is "broad enough to encompass a single interview that only included one false statement"). The submission of Proposal 2 is therefore a discrete act constituting a crime, not a follow-on meeting as was the case in *Reitmeyer*. Thus, as with Count 1, Count 4 charges an offense that undisputedly occurred within the limitations period. It also sufficiently alleges that Dr. Wang himself knowingly made the false statements in a matter within the jurisdiction of the United States by causing Proposal 2 to be submitted containing such statements. As with Count 1, Dr. Wang may dispute that he knowingly caused the submission and was aware of the false statements in Proposal 2, and the Government will need to prove those facts at trial, but at this stage, the Government has properly alleged that Dr. Wang committed the offense charged in Count 4 within the five-year statute of limitations. The Motion will therefore be denied as to the statute of limitations argument.

## IV.    Major Fraud Value Requirement

Dr. Wang also argues that Count 1, charging a major fraud against the United States, is defective because it fails to allege facts showing that the value of the grant at issue was $1 million or more.

Under the relevant statute, an individual commits a major fraud against the United States when that person "knowingly executes, or attempts to execute, any scheme or artifice with the intent" either "to defraud the United States" or "to obtain money or property by means of false or fraudulent pretenses, representations, or promises" "in any grant, contract, subsidy, loan guarantee, insurance, or other form of Federal assistance . . . if the value of such grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, or any constituent part thereof, is $1,000,000 or more." 18 U.S.C. § 1031(a). Dr. Wang argues that the Indictment is defective

13

because Count 1 charges that the major fraud arose from the submission of Proposal 1, which was described as including a budget request for the cost of Dr. Wang's anticipated work valued at only $118,975. The Government, however, argues that the $1 million requirement is satisfied because Proposal 1 was one of "multiple applications" submitted in 2018 in order to obtain Grant 2, which was for the development of Drug A and had a total award value of $3,906,146.

In *United States v. Brooks*, 111 F.3d 365 (4th Cir. 1997), the Fourth Circuit considered whether the defendants committed a major fraud in relation to two subcontracts: one worth $51,544 and one worth $1,470. *Id.* at 368. The prime contracts connected to these subcontracts were valued at $9 million and $5 million, respectively. *Id.* Like Dr. Wang, who argues that Proposal 1 did not meet the $1 million value required under statute, the defendants argued that their subcontracts did not satisfy the $1 million value threshold. *Id.* The court disagreed and held that "a straightforward reading of this statute" provides that "any contractor or supplier involved with a prime contract with the United States who commits fraud with the requisite intent is guilty so long as the prime contract, a subcontract, a supply agreement, or any constituent part of such a contract is valued at $1 million or more." *Id.* at 368–69. In so ruling, the court rejected the ruling by the United States Court of Appeals for the Second Circuit in *United States v. Nadi*, 996 F.2d 548, 551 (2d Cir. 1993), which directed courts to look at the value of the "specific contract upon which the fraud is based," in part because that interpretation "could significantly undermine the purpose of the statute because pervasive fraud on a multi-million dollar defense project would be unreachable under the statute, despite Congress' intent, if it were perpetrated in multiple separate subcontracts, each involving less than the jurisdictional amount." *Brooks*, 111 F.3d at 369.

Although the version of the statute at issue in *Brooks* referenced only contracts and predated the expansion of the statute to cover grants, the operative language is the same in that it

14

refers to the "value of such grant . . . or any constituent part thereof" as over $1 million, not to the value of individual proposals, task orders, or other subparts. *See* 18 U.S.C. § 1031(a). Thus, under *Brooks*, Count 1 properly alleges that Dr. Wang committed a major fraud against the United States because it alleged a fraud relating to Grant 2, which was valued at over $1 million.

Because the Court in assessing the sufficiency of an indictment must rely solely on the facts contained in the indictment and must accept such facts as true, *see Engle*, 676 F.3d at 415, the fact that Dr. Wang disputes whether Proposal 1 was actually connected to Grant 2 is not a sufficient basis to dismiss the charge. The Motion will be denied as to the argument on the major fraud value requirement.

**V.    Venue**

Dr. Wang also seeks dismissal of Count 1, charging a major fraud against the United States, based on improper venue. Dr. Wang argues that the Indictment does not allege facts showing that Dr. Wang committed the charged offense in the District of Maryland.

Federal Rule of Criminal Procedure 18 prescribes that "the government must prosecute an offense in a district where the offense was committed" unless a statute permits otherwise. Fed. R. Crim. P. 18. Here, the major fraud statute does not provide specific venue requirements, so the Court applies the general federal criminal venue statute, which states that a federal criminal offense "begun in one district and completed in another, or committed in more than one district," may be "prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Venue is "determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2005). This means that there may be more than one appropriate venue, including "a venue in which the defendant has never set foot." *United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000). However, venue is

15

generally limited to the place in which the "essential conduct" elements of the offense occurred. *Id.*

The Indictment specifically alleges that Dr. Wang executed Count 1 "in the District of Maryland, and elsewhere," Indictment ¶ 29, and states that NIH, which received the various grant applications, is headquartered in Bethesda, Maryland, within the District of Maryland. More specifically, the Indictment alleges that during the relevant time period, "grant applications were submitted to NIH electronically and received through computer servers located within the District of Maryland." *Id.* ¶ 6. Thus, it alleges that Proposal 1 was sent to and received in the District of Maryland.

In the Motion, Dr. Wang argues that the alleged fraud was committed and completed when Proposal 1 was submitted to NIH, and that where the Indictment alleges that Cassava "submitted multiple applications" relating to Grant 2 to NIH, and that Dr. Wang "caused [Cassava] to submit" those applications, *id.* ¶ 17, Proposal 1 was presumably sent to NIH by Cassava from its location in Austin, Texas within the Western District of Texas, not by Dr. Wang. He further argues that Dr. Wang's alleged action of having "caused to be submitted to NIH" Proposal 1 necessarily occurred at either CUNY in New York City in the Southern District of New York or at his home in Philadelphia in the Eastern District of Pennsylvania. At the hearing, Dr. Wang's counsel further asserted that to the extent that Dr. Wang transmitted any results from his scientific research, he sent materials to Cassava in Texas, not directly to NIH. He therefore argues that while venue may be proper in one of these districts, it is not proper in the District of Maryland.

Dr. Wang's argument fails. First, Dr. Wang's contention that the crime of major fraud against the United States is complete upon the sending of a grant application, and that venue therefore may not lie in the district in which the application is received, is unsupported by law.

The Court agrees with Dr. Wang that the specific act constituting the crime, and thus the essential conduct element of the offense, is the execution or attempted execution of the scheme to defraud. *See* 18 U.S.C. § 1031(a); *United States v. Verclas*, No. GJH-18-160, 2019 WL 95148, at *3 (D. Md. Jan. 3, 2019). However, it concludes that because the execution of the scheme necessarily continues until the fraudulent grant application is received, venue may lie in the District in which the application is received. *See* 18 U.S.C. § 3237(a) (stating that a federal criminal case may be "prosecuted in any district in which such offense was begun, continued, or completed"). Although the Fourth Circuit has not addressed the specific question of where venue for a major fraud offense is proper, it has analyzed venue in the related context of wire fraud, another crime in which the offense conduct consists of the execution of a scheme to defraud through a transmission. *See* 18 U.S.C. § 1343; *Jefferson*, 674 F.3d at 367. In *Ebersole*, the Fourth Circuit specifically held that a wire fraud occurs "both where [the wire transmittal] was sent and where it was received." *Ebersole*, 411 F.3d at 527. Applying similar logic to the facts of this case, the Court finds that the major fraud occurs both where the grant application was sent and where it was received. *See id.*; *Verclas*, 2019 WL 95148 at *3 (in assessing venue for a major fraud offense, analogizing to case law on wire fraud).

Similarly, the Fourth Circuit has also analyzed venue in the context of the federal crime of bank fraud, 18 U.S.C. § 1344, which uses comparable language to 18 U.S.C. § 1031 in that it identifies the crime as the "execut[ion]" of "a scheme . . . to defraud" and also relies on the general federal criminal venue statute, and found that venue was proper in the district in which the debit transaction request resulting in the fraudulent transfer of funds was received by the bank. *See United States v. Bankole*, 39 F. App'x 839, 841–43 (4th Cir. 2002) (per curiam). Specifically, the court found that where the defendant initiated a debit transaction from Maryland which resulted in

17

a transfer of funds to a vendor in New Hampshire that was effected when the electronic request was received and processed by the bank in Virginia, venue was proper in the Eastern District of Virginia. *Id.* (finding venue under 18 U.S.C. § 3237(a) because "the bank fraud offense was *begun* in Maryland, *continued* into New Hampshire, and was *completed* in the Eastern District of Virginia").

Dr. Wang's reliance on the facts and outcome in *United States v. Verclas*, GJH-18-160, 2019 WL 95148 (D. Md. Jan. 3, 2019), is misplaced. In *Verclas*, the Government sought to establish venue for a major fraud offense based on the fact that although the grant application was sent from New York and received by the State Department in Washington, D.C. or a state other than Maryland, the grant fund withdrawals were processed through a payment system in Maryland. *Id.* at *2–4. The court held that because venue is based on where the act constituting the crime occurred, the payment processing in Maryland did not establish venue because it was not the essential conduct of the offense and occurred after the scheme was executed. *Id.* The court did not find that venue would be improper in the district in which the grant application was received. *See id.* at *3. Thus, the Court finds that venue may lie in the district in which the fraudulent application was received, in this case, Maryland.

Second, Dr. Wang's argument that venue is improper because he did not personally transmit Proposal 1 to NIH presents a factual dispute not properly resolved on a motion to dismiss. Where the Indictment alleges that Dr. Wang "knowingly execut[ed] the scheme . . . with the intent to defraud the United States" "in the District of Maryland and elsewhere," and that he "caused to be submitted to NIH" Proposal 1, Indictment ¶ 18, it properly alleges that Dr. Wang's role was sufficient to warrant criminal responsibility for the submission of Proposal 1. *See Engle*, 676 F.3d at 415 (requiring the court, in assessing a motion to dismiss, to consider the facts alleged in the

indictment to be true). Thus, while the Government must prove at trial, and Dr. Wang may contest, that the venue requirement has been satisfied, the Motion to Dismiss will be denied as to the issue of venue. *See United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004) ("[I]f an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of the evidence."); *Engle*, 676 F.3d at 412–13 (stating that venue is "ordinarily decided by the jury" and that factual disputes relating to venue must be submitted to the jury).

## VI.   Vagueness

Finally, Dr. Wang argues that the entire Indictment should be dismissed because it is too vague and does not give Dr. Wang fair notice of the conduct underlying the various counts. Dr. Wang argues that the Indictment states only that Dr. Wang "caused the submission" of the proposals to NIH "without alleging any facts indicating *how, when,* or *why* he did so." Mot. Dismiss at 22. Further, Dr. Wang takes issue with the fact that, other than the manipulation of the Western blot image in Figure 1, the Government has not alleged any other specific facts to support the allegation that Dr. Wang engaged in a scheme to defraud. Dr. Wang also asserts that although the Indictment generally alleges that Dr. Wang made false statements to the NIH in several broad categories, it does not identify the specific false statements. He contends that in the context of "Dr. Wang's decades of research and [Cassava's] hundreds of pages of NIH submissions," the allegations are too vague to permit him to understand the charges against him.

As noted above, an "indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *Perry*, 757 F.3d at 171 (quoting *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009)). The indictment must include "a statement of the

19

essential facts constituting the offense charged," *id.* (citation omitted), but does not require that it "include every fact to be alleged by the government," *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012).

Where the Indictment identifies the dates of the fraudulent scheme, includes an extensive narrative outlining the nature of the scheme, and identifies the specific proposals and dates of submission or transmission upon which the major fraud, wire fraud, and false statements charges are based, the Indictment is sufficient to put Dr. Wang on notice of the crimes alleged. *See United States v. Vinyard*, 266 F.3d 320, 325-26 (4th Cir. 2001) (upholding the sufficiency of an indictment in the analogous mail fraud context). In particular, the Indictment specifically identifies the Western blot images produced by Dr. Wang as the key false statements underlying the charges, and viewed in context, is fairly read to allege that Dr. Wang knowingly falsified those images, submitted them to Cassava with the knowledge that they would be submitted as part of grant applications containing fraudulent research results, and did so in order to secure funding that would benefit him. The Motion to Dismiss will be denied on the issue of vagueness.

To the extent that Dr. Wang believes that he needs more information to prepare his defense and to avoid any unfair surprise at trial, the appropriate remedy would be a bill of particulars, which he has sought as alternative relief. *United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1047 (4th Cir. 1987). A defendant may "move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). In light of the broad time frame of the alleged scheme to defraud, and where the Government has acknowledged that it intends to offer evidence of multiple false statements attributable to Dr. Wang and that it has produced voluminous discovery of approximately one million documents amounting to four million pages of records, including the full contents of various electronic devices reproduced

20

without regard to relevance, the court agrees that the defense should fairly receive additional information relating to the charges. Specifically, the Court concludes that Dr. Wang should receive a list of the allegedly false statements made directly by Dr. Wang that the Government intends to introduce at trial, including the date of each statement and the person to whom it was made. *See United States v. Rogers*, 617 F. Supp. 1024, 1029 (D. Colo. 1985) (requiring a bill of particulars on the allegedly false statements made by defendants); *United States v. Elbaz*, 332 F. Supp. 3d 960, 982–83 (D. Md. 2018) (in light of the volume of discovery and broad time frame of the charged offenses, requiring a bill of particulars on the allegedly false statements that the Government intended to introduce at trial).

Such information, however, does not necessarily need to come in the form of a bill of particulars and may instead be provided through discovery. *See United States v. Duncan*, 598 F.2d 839, 848 (4th Cir. 1979); *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973) (upholding the denial of a bill of particulars where the objectives of such a bill were satisfied by the government's voluntary disclosure of the relevant information to the defendant before trial). At the hearing on the Motion, the Government informed the Court, and defense counsel confirmed, that it has identified to the defense a list of the allegedly fraudulent images and accompanying false statements made or created by Dr. Wang that the Government intends to introduce at trial and notified defense counsel of where within the discovery such statements can be found. At the Court's direction, the Government docketed a written list of such statements on December 19, 2024. ECF No. 68. Where the Government has committed to supplementing this list to notify the defense of any additional false statements by Dr. Wang that it will introduce at trial, including informing the defense of the location of any documents relevant to such statements within the discovery productions, the Court finds no present need for a bill of particulars. Where the issue of

fair notice can and will be addressed through the discovery process, the request for a bill of particulars will be denied.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Indictment, ECF No. 48, will be DENIED.

Date:    January 8, 2025



THEODORE D. CHUANG
United States District Judge